UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| DAVID F. SCHWARTZ, ) | Case No. 6:03-bk-06007-KSJ |
| LESLIE D. SCHWARTZ, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| DAVID F. SCHWARTZ, ) | |
| LESLIE D. SCHWARTZ, ) | |
| ) | Adversary No. 6:07-ap-110 |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

The debtor, David F. Schwartz, owes over $1 million in federal income taxes for four tax years—1995, 1996, 1997, and 1998.[1] In this adversary proceeding, he seeks a ruling that these taxes are discharged[2] (Doc. No. 1). The Internal Revenue Service of the United States of America (the "IRS") objects on two grounds. First, as to three tax years (1995-1997), they argue that the debtor willfully evaded the payment of his tax liability making the obligations non-dischargeable under Section 523(a)(1)(C) of the Bankruptcy Code.[3] Second, as to tax year 1998, the IRS argues that the debtor never filed a tax return making his tax liability non-dischargeable under Section 523(a)(1)(B) of the Bankruptcy Code. For the reasons explained

---

[1] Leslie D. Schwartz, the co-debtor in this case, married David after he had incurred these tax liabilities. Therefore, she is not liable for these older taxes. As such, when the Court refers to the "debtor" in this Memorandum Opinion, the reference is only to David F. Schwartz.

[2] Mr. Schwartz received a discharge in this Chapter 7 bankruptcy case on April 15, 2004 (Main Case Doc. No. 22).

[3] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

below, the Court finds that the taxes for all four years are *not* dischargeable and will enter a judgment in favor of the IRS.

### Taxes for 1995, 1996, and 1997 are Not Dischargeable
### Pursuant to Bankruptcy Code Section 523(a)(1)(C)

The IRS first argues that David Schwartz cannot discharge his tax liability for 1995, 1996, and 1997, because he willfully attempted to evade payment of his taxes. Under the Bankruptcy Code, a tax debt is not dischargeable if "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The burden of proof is on the IRS to prove by a preponderance of the evidence that the taxes are not dischargeable. In re Griffith, 206 F.3d 1389, 1396 (11th Cir. 2000) (citations omitted).

The Eleventh Circuit Court of Appeals has issued a number of opinions discussing the applicable standards for bankruptcy courts to follow in interpreting Section 523(a)(1)(C) of the Bankruptcy Code. In re Jacobs, 490 F.3d 913 (11th Cir. 2007); In re Fretz, 244 F.3d 1323 (11th Cir. 2001); In re Griffith, 206 F.3d 1389 (11th Cir. 2000); In re Haas, 48 F.3d 1153 (11th Cir. 1995), *abrogated in part*, Griffith. 206 F.3d 1389.  In the decisions of Haas and Griffith, the Eleventh Circuit discussed the dischargeability of a tax debt when a debtor *timely* files his tax returns, but fails to pay the taxes. Non-payment, alone, is not enough to deny the debtor a discharge. Instead, the IRS must prove that the non-payment was an intentional and voluntary attempt to evade or defeat the tax liability.

In Fretz and Jacobs, the Eleventh Circuit discussed the applicable standard for non-dischargeability when, as here, the debtor fails to timely file (or never files) his tax returns. In Frentz, the taxpayer never filed tax returns. The Eleventh Circuit found that acts of omission, as well as acts of commission, such as failing to file tax returns "when coupled with the failure to pay taxes" can result in the debtor losing the ability to discharge his taxes under Section

523(a)(1)(C). Fretz, 244 F.3d at 1329 (citing with approval, In re Fegeley, 118 F.3d 979, 983 (3rd Cir. 1997) and In re Toti, 24 F.3d 806, 809 (6th Cir. 1994)).

In Jacobs, the case most factually similar to that here, the Eleventh Circuit found that several years of tax liability were not dischargeable because of certain affirmative actions taken by the debtor to evade payment. The debtor titled his home in the name of his wife, even though the debtor was liable on the mortgage and continued to make all the mortgage payments. The debtor relied on monies generated by businesses he ran to pay his personal living expenses, such as purchasing luxury cars. Most relevant to this case, the taxpayer in Jacobs failed to withhold any portion of his income for tax payments and failed to pay any estimated taxes while, simultaneously, buying extravagant luxury items and maintaining his previous expensive lifestyle. In Jacobs, as in this case, the taxpayers acknowledged their tax liabilities. However, in both cases, they simply chose to use their money for purposes other than paying their taxes.

In order to succeed under Section 523(a)(1)(C), the IRS must meet a two-step test. Step one, the conduct test, requires the government to prove that the debtor acted in a manner designed to evade the tax liability. The conduct test is satisfied when a debtor takes affirmative acts, including acts of omission or commission, to avoid payment of taxes. Fretz, 244 F.3d at 1329-30. Step two, the mental state requirement, examines the debtor's willfulness. Griffith, 206 F.3d at 1396. As to the mental state test, the IRS must show that: (1) the debtor had a duty to file income tax returns; (2) the debtor knew he had such a duty; and (3) the debtor voluntarily and intentionally violated that duty. Fretz, 244 F.3d at 1330. The IRS need not show any fraudulent intent, only that the taxpayer knowingly and deliberately failed to pay his taxes. Id.; *See also* In re Huber, 213 B.R. 182, 184 (Bankr. M.D. Fla. 1997) ("The type of willfulness required under Section 523(a)(1)(C) is not the result of inadvertence, carelessness or honest misunderstanding.").

The IRS contends that the taxes for the tax years 1995-1997 are not dischargeable under Section 523(a)(1)(C). In each of these years, the debtor earned income and had a duty to file tax returns. The debtor also concedes he knew he had a duty to file these returns. Therefore, as to the mental state test, the only issue is whether the debtor voluntarily and intentionally violated that duty, and, under the conduct test, whether the debtor took any affirmative acts to avoid payment of the taxes. Schwartz argues that he did not voluntarily or intentionally violate this duty but rather did not file returns or pay his taxes because he could not pay his taxes and, at the same time, pay his personal living expenses and the obligations arising from a divorce following a long-term marriage.

As background, the Court first will discuss the debtor's past tax payment history. David Schwartz was a consistent wage-earner and taxpayer for over 20 years as he steadily rose in prominence as an expert in media marketing. He paid taxes every year until he encountered problems in his long-term marriage. He legally separated from his wife of approximately 20 years in July 1993. In 1994, the debtor earned approximately $250,000. Consistent with his established history, the debtor timely filed his tax return, acknowledged tax liability of roughly $58,000, and withheld $19,000 from his wages to pay toward this liability.

After 1994, the debtor dramatically changed his established manner of paying his taxes. (The debtor and his former wife filed for a divorce in 1995. The divorce was finalized in 1997.) Starting in 1995, the debtor instructed his employers to stop or to substantially reduce withholding estimated taxes from his regular paychecks. In 1995, the debtor earned $231,673 during the year. However, he withheld a total amount of only $251 from his paychecks[4] to pay his tax liability of at least $58,000.

---

[4] The debtor withheld $7,774 from his wages for estimated tax payments in 1996. He withheld nothing for estimated tax payments in 1997, even though he earned over $329,000.

After 1994, Schwartz also stopped filing tax returns on a timely basis and, with one exception, paying his tax obligations for several years. He eventually filed his tax returns for 1995 listing income of $247,401 on October 28, 1997; for 1996 listing income of $127,773 on October 28, 1997;[5] and for 1997 listing income of $329,344 on September 25, 1998. (IRS Exh. Nos. 1, 2, 3, 5, 6, and 7). Each return was filed late.

The debtor also failed to report earned income on his late-filed tax returns. In January 1996, the debtor received the bulk of a large severance package from his former employer. Severance payments totaled almost $230,000. In 1996, he also received over $70,000 from a retirement account[6] he prematurely terminated and sold securities that resulted in a gain of $280,000. In his late-filed tax return for 1996, as well as in a subsequent amended return, Schwartz failed to report any portion of this additional income on his tax returns. As such, for 1996, in addition to substantially reducing estimated tax withdrawals and filing his returns late, the debtor still has not disclosed the receipt of income exceeding $600,000 he received in that tax year.

The debtor contends that he failed to timely file his tax returns and failed to pay his taxes for 1995, 1996, and 1997, because he could not pay both his living expenses and the divorce-related expenses while continuing to pay his taxes. In essence, the debtor argues that something had to go unpaid and that he chose not to pay his taxes. He knew he owed taxes, knew he had a duty to pay those taxes, earned sufficient monies to pay his taxes, and, instead, decided to use his monies to pay other expenses. By doing so, he made an intentional and voluntary choice—to pay his former wife and children rather than to pay his tax liability.

---

[5] The debtor filed an amended tax return for 1996 on December 12, 1997. (IRS Exh. No. 2).

[6] The disbursing agent for the pension fund did withhold $14,512 in estimated tax payments from the pension disbursement to the debtor.

Although the debtor may have made a morally admirable choice, he cannot now discharge his tax liability. By choosing to pay for his divorce-related obligations, he merely delayed and deferred payment of his tax obligations which, as a result, now have incurred substantial additional penalties and interest. When the debtor had a large annual income, he chose not to pay his taxes. Now, his income has decreased, but his tax obligation is still outstanding and growing. The law is clear that taxpayers who have the money to pay their taxes must do so first, before paying other expenses, or, instead, live with the unfortunate consequences Mr. Schwartz now faces.

Moreover, the Court does not accept the debtor's position that he could not pay both his taxes and his other living and family obligations. The debtor failed to substantially reduce his standard of living after his divorce.[7] He paid much more to his former wife and children than was required by the parties' marital settlement agreement or by court orders. The debtor continued to live well, to give his former family more monies than legally required, and funded this voluntary decision by failing to pay his taxes.

For example, Article X of the debtor's martial settlement agreement[8] with his former wife required him to pay $8,000 per month in combined alimony and support. (Debtor's Exh. No. 2). He had no obligation to pay any cost beyond this monthly stipend. Yet, during the years in question, the debtor, in addition to the required monthly child support payment, paid over $30,000 per year sending his two oldest daughters to expensive colleges. He also paid the girls' car insurance, monthly rent and gave them monthly spending money. He was not legally obligated to pay any of these amounts. Indeed, the preamble to Article X specifically stated that

---

[7] For example, from January through May 1998, the debtor spent at least $21,944 in personal expenses in addition to his normal living expenses for housing, transportation, child support, and alimony. He provided no credible explanation for the use of this money, other than he spent it for miscellaneous purchases. The debtor simply frittered away $22,000 that he could have used to pay his taxes.

[8] The Stipulation of Settlement, dated October 11, 1996, between the debtor and his wife was incorporated in toto into the parties Judgment of Divorce, entered on May 22, 1997. (Debtor's Exh. No. 2).

the monthly child support payment included "college education." The debtor made an intentional and voluntary choice to spend his income on this laudable purpose, but, he cannot now credibly argue that he was unable to pay his taxes at the time. He simply chose not to pay his taxes.

The debtor next argues that, although he knew he was delinquent in his tax obligations, he still hoped to receive a substantial windfall from a new employer to catch up on his payments. Schwartz moved to Florida to accept a new job with Rainbow Broadcasting in July 1996. Rainbow Broadcasting was in the business of starting new television stations directed to the Hispanic audience, and they needed a person, such as the debtor, who was experienced in media marketing. Schwartz' salary was much less than he earned in New York, only $125,000 plus commissions, but, in exchange, he was promised an equity interest in the business. (The testimony was inconsistent as to whether the debtor actually received an equity interest in the company). Schwartz testified that he believed the business would sell for a large profit, and he then would have more than sufficient monies to pay his delinquent tax liability.

In September 1999, a purchaser bought the debtor's employer. Schwartz, however, did not receive the promised percentage of the sale proceeds. He, instead, was fired by the new owners in November 1999. He received a substantial severance payment of $500,000. From this amount, Schwartz paid taxes of approximately $168,000, roughly the amount of tax liability accruing just on the severance payment. He kept $332,000 of this severance payment and used no other portion of the severance amount to pay his outstanding tax liability for 1995, 1996, or 1997. The debtor did receive a windfall, $500,000; however, he used no portion of these monies to catch-up on his delinquent taxes. Instead, he again voluntarily chose to keep the monies to spend as he saw fit.[9]

---

[9] As further indicia that the debtor willfully evaded payment of his taxes, in 1999, the debtor and his new wife purchased a home. He titled the home in his wife's name only solely because of the outstanding tax obligations and tax lien. Mrs. Schwartz had no income at the time. David Schwartz made all of the mortgage payments on the home, even though he was not on the title.

As to the tax years 1995, 1996 and 1997, the debtor, David Schwartz, took affirmative acts to avoid payment of his taxes. He failed to file timely returns. Contrary to the previous decades, he totally stopped withholding any appropriate portion of his wages to pay his tax liability. For 1996, when he eventually filed late tax returns, he failed to report substantial income of almost $600,000. He took these actions when he had a duty to file his tax returns, he knew he had this duty, and voluntarily and intentionally violated the duty by choosing to pay other expenses rather than pay his taxes. As such, the debtor's tax liabilities for 1995, 1996, and 1997, are not dischargeable under Section 523(a)(1)(C) of the Bankruptcy Code.

### Taxes for 1998 are Not Dischargeable
### Pursuant to Bankruptcy Code Section 523(a)(1)(B)

The IRS next argues that the debtor's 1998 tax liability is not dischargeable under Section 523(a)(1)(A) of the Bankruptcy Code because he never filed a tax return. Pursuant to Section 523(a)(1)(B)(i) a discharge in a Chapter 7 case "does not discharge an individual debtor from any debt…with respect to which a return…was not filed." As such, a debtor can never discharge tax liability if no tax return was filed. When there is a dispute as to whether a return was filed, the burden of proof is on the debtor to prove he filed the return by a preponderance of the evidence. In re Huber, 211 B.R. 767, 770 (Bankr. M.D. Fla. 1995).

In 1998, the debtor earned $241,603.57. He withheld estimated taxes of $927.22. (IRS Exh. No. 9). The debtor testified that he filed his 1998 tax return, but he has only a draft copy. The IRS never received any tax return from him for 1998. (IRS Exh. No. 4).

The debtor has failed to offer any credible proof that he filed his 1998 tax return. A tax return is deemed filed on the date of the postmark or the date a receipt is issued by the post office for either certified or registered mail. 26 U.S.C § 7502(a) and (c). Here, the debtor does not have a signed copy of the 1998 return. He does not have a stamped envelope with a postmark, a registered or certified mail receipt, or any evidence to support his position that he filed a return in

1998. He certainly may have asked his accountant to prepare the return but nothing indicates the return was ever filed.

Because the debtor cannot demonstrate that he filed a tax return for the 1998 tax year, he cannot discharge the obligation under Section 523(a)(1)(B).[10] A final judgment in favor of the IRS will be entered finding that the debtor's tax liabilities for the tax years 1995, 1996, 1997 and 1998, are not discharged.

### IRS Did Not Violate the Discharge Injunction

After November 1999, the debtor encountered serious health problems and had difficulty finding a new job. He was unemployed through January 2003, when he accepted a new job in Michigan. He timely paid his federal income taxes from 2003 through 2006.

After accumulating debts during this lengthy period of unemployment, the debtors filed this Chapter 7 bankruptcy case on May 27, 2003. They received a discharge on April 15, 2004 (Doc. No. 22 in the Main Case). David Schwartz never sought to determine the dischargeability of his old federal tax liability during the case. He simply assumed that, because he had not heard from the IRS in many years, it considered his old tax liabilities discharged. Indeed, on October 4, 2006, the IRS filed a notice releasing its Federal Tax Lien for the 1997 tax year. (Debtor's Exh. No. 5).

After the case was closed, however, the IRS reinstituted collection actions. In October 2006, the IRS initiated a new levy. (Debtor's Exh. No. 4). It regularly sent collection letters to the debtor. In response, the debtor moved to reopen his bankruptcy case, which the Court granted on August 8, 2007 (Doc. No. 31 in the Main Case).

---

[10] In any event, even if the debtor later was found to have filed his 1998 tax return, the tax liability is still not dischargeable pursuant to Section 523(a)(1)(C), for all of the same reasons delineated above for the tax years 1995, 1996 and 1997. He earned approximately $240,000 in income in 1998, withheld a total of $941 from his paycheck, and spent at least $22,000 on discretionary purchases that could have paid his tax liabilities.

Shortly after his case was reopened, the debtor filed this adversary proceeding seeking, in Count I of his Complaint, confirmation that his tax liabilities were discharged.  In Count II of the Complaint, the debtor also contended that the IRS violated the discharge injunction arising under Bankruptcy Code Section 524 because it attempted to collect upon his allegedly discharged tax obligations.[11]  Pursuant to Bankruptcy Code Section 524, a Chapter 7 discharge operates as an injunction against any act to collect or recover a debt as a personal liability of a debtor. However, "that injunction prohibits collection only with respect to dischargeable debts and does not apply to nondischargeable debts." U.S. v. White, 466 F.3d 1241, 1246 (11th Cir. 2006). Holders of non-dischargeable debts can seek repayment from the debtor after confirmation or the entry of a discharge.  White, 466 F.3d at 1245 (citing In re Gurwitch, 794 F.2d 584, 585-86 (11th Cir. 1986) (IRS can collect after confirmation), and In re DePaolo, 45 F.3d 373, 375 (10th Cir. 1995) (holders of nondischargeable debts entitled to enforce collection rights to which they are entitled outside of bankruptcy)).

Here, the debtor's taxes are excepted from discharge pursuant to Bankruptcy Code Sections 523(a)(1)(B) and (C). As noted on the discharge papers sent to the debtors on April 15, 2004 (Doc. No. 22 in the Main Case), a Chapter 7 discharge does <u>not</u> discharge debts for most taxes. Because the tax debts are not dischargeable, the discharge injunction does not bar attempts by the IRS to collect the amounts owed by the debtor.  As such, the IRS's Motion to Dismiss Count II is unnecessary and is denied as moot.

---

[11] The IRS filed a Motion to Dismiss Count II of the debtor's complaint on August 18, 2008 (Doc. No. 19) arguing, for multiple reasons, that this Court lacks subject matter jurisdiction to decide the issues raised in Count II in which the debtor alleged the IRS violated the discharge injunction. However, because the Court is ruling against the debtor on Count I of his complaint and has held that the debtor's taxes are non-dischargeable, none of the relief sought by the debtor in Count II will be granted, even if subject matter jurisdiction existed.

Accordingly, judgment is entered against the debtor. His taxes for the years 1995, 1996, 1997, and 1998 are not dischargeable. A separate order consistent with this Memorandum Opinion shall be entered simultaneously herewith.

DONE AND ORDERED in Orlando, Florida, on January 9, 2009.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor/Plaintiff: David F. Schwartz, 17903 Bahama Isle Drive, Tampa, FL 33647

Debtor/Plaintiff: Leslie D. Schwartz, 17903 Isle Drive, Tampa, FL 33647

Debtors' Attorney: Robert B. Branson, 1524 E. Livingston Street, Orlando, FL 32803

Defendant: United States of America/IRS, 400 W. Bay Street, Ste 35045, Stop 5730-Grp 4, Jacksonville, FL 32202

Defendant's Attorney: Mara A. Strier, Department of Justice Tax Division, 555 4th Street NW, Room 6220, Washington, DC 20001